362 A.2d 420

COMMONWEALTH of Pennsylvania

v.

Gary E. GLASCO, Appellant.

Superior Court of Pennsylvania.

June 28, 1976.

486

David E. Auerbach, Asst. Public Defender, Media, for appellant.

Ralph B. D'Iorio, Asst. Dist. Atty., Media, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge.

This is an appeal from the lower court's denial of appellant's Post Conviction Hearing Act petition. We find no merit in appellant's contentions and affirm the order of the court below.

About 12:45 a. m. on April 10, 1972, police officers observed appellant in the act of robbing, at gunpoint, a 7–11 food store in Ridley Township, outside Philadelphia. The booty netted in this nefarious enterprise included the wallet of an employee, $66.00 in bills from the cash register and a carton of Pall Mall cigarettes. After leav-

ing the store, appellant entered his car and avoided immediate capture by evading a police blockade. During a subsequent chase, which ultimately involved thirteen police vehicles, appellant drove at speeds of seventy to eighty miles per hour and fired several shots at his pursuer, striking one car on the windshield. He was eventually apprehended when he attempted to go through a gas station and collided with a parked truck.

At the time of appellant's arrest, the $66.00 was found on his person; the 7–11 employee's wallet fell from the car when the driver's door was opened; packs of Pall Mall cigarettes littered the car's interior; and, a .32 caliber automatic pistol, together with two empty shell casings, lay on the floor of the car.

The appellant was indicted on various charges including, *inter alia*, robbery and robbery by assault and force,[1] burglary,[2] larceny,[3] receiving stolen goods[4] and attempt with intent to kill.[5] Appellant was interviewed twice and represented at arraignment by a member of the defender's office. The case was originally listed for trial on January 8, 1973, but was continued to February 5, 1973, to allow a substitute counsel additional time to prepare his defense. On February 5 and 6, 1973, appellant was tried before a judge and jury. Following a verdict of guilty on all charges, trial counsel filed post-trial motions for a new trial. Subsequently, a motion entitled "supplemental reason for a new trial" was added, a contribution of appellant's third counsel. This motion urged ineffectiveness of appellant's trial counsel as a ground for a new trial. These motions were argued and denied. The appellant was sentenced on December 21, 1973. No

1. Act of June 24, 1939, P.L. 872, § 704 (18 P.S. § 4704).
2. Act of June 24, 1939, P.L. 872, § 901 (18 P.S. § 4901).
3. Act of June 24, 1939, P.L. 872, § 807 (18 P.S. § 4807).
4. Act of June 24, 1939, P.L. 872, § 817 *as amended* (18 P.S. § 4817).
5. Act of June 24, 1939, P.L. 872, § 711 (18 P.S. § 4711).

appeal was taken from this disposition. On September 11, 1974, the appellant filed a petition under the Post Conviction Hearing Act.[6] A hearing on this petition was held January 17, 1975, after which the lower court denied relief. The instant appeal followed.

The first alleged point of error raised by appellant concerns the trial court's charge to the jury on the issue of appellant's defense of involuntary intoxication. Appellant never denied or disputed, at trial or otherwise, the facts of the 7–11 store robbery and the subsequent police pursuit, or his involvement as the principal therein. His theory of defense was that he mistakenly injected a drug with which he was unfamiliar, thinking it to be a drug he used regularly, and that due to the effects of this drug he became totally unaware of and thus unable to control his behavior. Appellant testified that, at the time of the events relevant to this appeal, he was addicted to cocaine and methedrine. On the night of the robbery, appellant stated, some people came by his apartment with drugs to sell. He bought some of the merchandise, allegedly thinking it to be methedrine when it was actually mescaline. Appellant injected the drug into a vein and then left the apartment, entering his girl friend's car. From this point, according to his testimony, appellant had no recollection of the ensuing events, only returning to consciousness three or four days later, in the hospital. Appellant stated that he had never taken mescaline before, and was thus unfamiliar with its effects. The legal argument advanced by appellant was that, on the basis of the above-recounted facts, first, that he had suffered from involuntary intoxication and thus could not have formed the requisite intent to commit the charged offenses and, second, that he was temporarily insane during the relevant period and should not be held responsible for his acts.

6. Act of January 25, 1966, P.L. (1965) 1580, § 1 (19 P.S. § 1180–1) *et seq.* (Supp.1975–76).

The trial court gave the following charge to the jury regarding the defense of involuntary intoxication:

"You must understand one thing clearly. You will note that the duty reposed in the Defendant is to prove being under the influence of this drug by a fair preponderance or weight of the credible evidence. While all of the ingredients necessary to prove the Commonwealth's case must be shown to you beyond a reasonable doubt, this severe rule does not apply in the case of an affirmative defense such as here. There is [sic] fair preponderance of the evidence in favor of the Defendant is sufficient.

You should remember that the primary burden of proving guilt beyond a reasonable doubt, not only as to the consummation of the crime or crimes, but every essential element thereof, does not shift from the Commonwealth, but remains in the Commonwealth throughout the entire trial. It is only that if the Defendant proves to you his defense by a fair preponderance of the credible evidence, that would be sufficient to create a reasonable doubt, and the Defendant should have its benefit." (NT 144–45)[7]

The appellant asserts that the decision of our supreme court in *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974), renders this charge clearly erroneous. The court makes this statement therein:

"[I]t is error for the trial judge to instruct the jury that there is a burden upon the defendant to establish his intoxication by a preponderance of the evidence. Such evidence is offered by the defense solely to cast doubt upon the existence of the specific intent to kill and, as with all elements of the crime, the defendant has no burden of persuasion." *Id.* at 389, 321 A.2d at 884.

7. Notes of Trial Testimony.

██ We agree that the quoted portion of the charge in this case violates *Rose, supra.* At the time this case was tried, however, such a charge was in complete accord with the existing law. *See Commonwealth v. Duncan,* 437 Pa. 319, 263 A.2d 345 (1970), and cases cited therein. The issue here is whether the holding in *Rose* applies retroactively to the instant facts and to similar cases. We hold that it does not.

The Post Conviction Hearing Act provides a mechanism whereby a petitioner may raise a claimed violation of "a right that was not recognized as existing at the time of the trial if the constitution requires retrospective application of that right." Act of January 25, 1966, P.L. (1965) 1580, § 3(c)(12) (19 P.S. § 1180–3(c)(12)) (Supp.1975–76). The case before us presents a true question of retroactivity. The appellant was sentenced on December 21, 1973, and took no direct appeal, while the decision in *Rose* was not filed until July 1, 1974. Our court decided this issue in *Commonwealth v. Boyer,* 237 Pa.Super. 341, 352 A.2d 431 (1975). Judge Jacobs, speaking for the court, stated "[a]fter considering the criteria involved in deciding the issue of retroactivity, we must conclude that *Rose* should not be applied to any case where the conviction was final before the date of that decision." *Id.* at 348, 352 A.2d at 434.[8] The appellant's argument, seeking a new trial on the basis of *Rose,* is thus controverted by our recent decision.

The second contention made by appellant is that he should be granted a new trial because he was inadequately represented by his trial counsel. Appellant's brief cites seven different points, which we will consider seriatim, in support of this claim.

8. Although *Boyer* involved the application of *Rose* to an insanity defense, insanity and intoxication are both affirmative defenses, and we find the analysis stated in *Boyer* to be equally persuasive in both instances.

492

 Initially, appellant claims that he had inadequate opportunity to consult with his trial counsel prior to trial. Appellant, by admission, met with his trial attorney twice before the actual trial proceeding. Although appellant complained, at trial and in later proceedings, about these discussions "not going into any depth" regarding his defense, the record does not indicate inadequate preparation or unfamiliarity with the facts by appellant's trial counsel. In determining ineffectiveness, "[t]he length of counsel's conversation with his client is thus but one of the factors which we must evaluate in light of the nature of the charge, the issues presented, the availability of witnesses, etc. . . . ." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 608–09, 235 A.2d 349, 355 (1967). Testimony at the PCHA hearing reveals that trial counsel had access to appellant's defender file, which included notes and interview material compiled by trial counsel's predecessor. Appellant's attorney made a reasonable presentation of his "wrong drug" defense. This argument provides no basis for a finding of inadequate representation.

 Appellant's second allegation of inadequacy is that his trial counsel failed to subpoena or otherwise have in court a witness named Sidney Robinson. Testimony by appellant's trial counsel at the PCHA hearing indicated that he did not feel this witness' testimony would be useful in appellant's intoxication or temporary insanity defense because, first, the witness apparently had only a short time to observe appellant after he injected the drug and, second, the witness' conjecture that the drug injected by appellant was mescaline was based solely upon his observation of appellant's reaction to the drug. In addition to these factors, the PCHA testimony of appellant's trial counsel was that he recalled appellant giving him only "some first names" of possible witnesses to his drugged condition. These witnesses were also, as counsel understood, under the influence of drugs

at the time. Finally, it appears that neither trial counsel nor appellant himself was aware of Robinson's address at the date of trial. Evaluating the credibility of the conflicting testimony on this issue was a matter uniquely within the competence of the lower court at the PCHA hearing. We perceive no reason to change its disposition in this appeal. It clearly cannot be said, on these circumstances, that trial counsel's decision had no reasonable basis.[9]

■ The third point of alleged ineffectiveness raised herein is trial counsel's failure to introduce appellant's hospital records. Appellant was hospitalized subsequent to his arrest for treatment of injuries incident to the abrupt termination of his flight from the police. Appellant's position is that these records would have supported his claim of drug addiction and thus substantiated his defense. Throughout these records, there is but a single reference to the appellant as a "drug addict," although it is stated that he takes an amphetamine daily and is a steady drug user. The records also state that appellant was "alert and oriented," refer to him as a "bandit" and recount the circumstances of his capture. These records could in no way support appellant's allegation of having injected mescaline rather than methedrine, and trial counsel could reasonably have concluded that their introduction into evidence would be more prejudicial to the appellant than supportive of his defense theory.

■ Appellant next contends that his trial counsel was ineffective in failing to obtain the testimony of one of the unspecified doctors who was present at appellant's admission to the hospital. This doctor, it is argued, could

9. This proffered testimony from Robinson did not qualify the appellant for relief under 19 P.S. § 1180–3(c)(13). The record does not establish the unavailability of the witness at time of trial, his testimony would have been cumulative rather than exculpatory and it is extremely doubtful that his testimony would have changed the outcome of the trial.

have described appellant's condition at the time and thus added much credibility to his defense. The doctor in question did not, however, testify at the PCHA hearing, nor was any evidence offered to indicate that he would or could corroborate appellant's story, either as to his condition upon admission to the hospital or his having injected mescaline. The previously mentioned description of appellant as "alert and oriented," which is included in the medical history taken on April 10, 1972 (the date of the robbery involved herein), makes it appear highly doubtful that appellant's defense could have benefitted from the testimony of any of the doctors who treated him. Under these circumstances, we can find no basis to criticize trial counsel's decision not to seek out this potential witness.

The fifth point raised in support of appellant's ineffectiveness argument is trial counsel's failure to call as a witness Detective Randall of the Ridley Township Police. It is alleged that because this detective was familiar with appellant as a result of appellant's prior criminal involvement, and was also present when appellant was brought to the police station following his apprehension, he could testify as to how appellant's condition differed, at that time, from his normal state. Detective Randall did not testify at the PCHA hearing, leaving appellant's characterization of his potential testimony unsubstantiated. Appellant likewise wanted his police record introduced to indicate that he had no history of violent crime and thus establish that his actions on the night of the 7–11 robbery were abnormal. Trial counsel testified, at the PCHA hearing, that he declined to introduce appellant's extensive police record and to call police witnesses because he "felt that this would only further prejudice the Jury against Mr. Glasco's credibility." This decision certainly rested on a reasonable premise.

Appellant's final allegation of ineffectiveness on the part of trial counsel is his failure to strike a certain

juror. This juror indicated a prior contact with defense counsel, in that counsel had represented the juror's wife in a divorce proceeding against him. The juror stated that this prior contact would in no way bear upon or influence him regarding the case to be tried. There is no evidence or allegation that the prior contact of this juror with defense counsel had an effect on the outcome of this case. No evident prejudice to appellant resulted, and the questioned conduct was not so negligent or capricious as to constitute ineffective assistance.

We have weighed all of appellant's arguments of ineffective assistance in accordance with the standards expressed by our supreme court in *Commonwealth ex rel. Washington v. Maroney, supra.*

The court there states:

"our inquiry cases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." *supra* at 604–05, 235 A.2d at 352–53.

Trial counsel in the instant case adequately developed, by his questioning of appellant, the defense of involuntary intoxication. The trial judge allowed the appellant to substitute its own nomenclature, "temporary insanity," as to his defense. The trial judge gave a full and correct charge to the jury except in regard to the burden of proof, as discussed earlier, on appellant's defense. We cannot say that "[t]he defense actually tendered was so insubstantial in relation to those not offered as to cast doubt upon the hypothesis that trial counsel made a deliberate informed choice." *Commonwealth ex rel. Wash-*

*ington v. Maroney, supra* at 604, 235 A.2d at 352. On this basis we find that trial counsel representation in the instant case was effective.

■ Appellant additionally alleges the ineffectiveness of his post-trial counsel in advising him not to take a direct appeal from his conviction. The contention that appellant was advised to forego a direct appeal and to seek PCHA relief instead is borne out by the record. The opinion of the trial judge, in fact, suggests such a course of action, stating that "the charge of 'incompetent' counsel generally sounds more in Post Conviction Relief." This advice, however, was neither ineffectiveness on the part of post-trial counsel nor error by the trial judge, but rather a fair statement of the existing law at the time of appellant's conviction. In *Commonwealth v. Brown*, 217 Pa.Super. 190, 193, n. 1, 269 A.2d 383, 386, n. 1 (1970), this court determined that "claims of ineffective assistance of counsel should, after May 11, 1970, properly be raised in post-conviction proceedings and be reviewed in review of such proceedings." This principle was given further explication in *Commonwealth v. Benjamin*, 219 Pa.Super. 344, 345, n. 1, 280 A.2d 625, 626, n. 1 (1971), where the court states:

> "Ordinarily, in the absence of clear and irrefutable on the record proof that counsel was ineffective, we will not decide an ineffective assistance of counsel claim on direct appeal. Rather, we will wait until an evidentiary hearing has given the Commonwealth an opportunity to show that the representation was effective . . . ."

It is evident from the preceding discussion that trial counsel's performance in this case did not provide "clear and irrefutable on the record proof" of ineffectiveness. It was thus proper procedure, under the law at the time of appellant's conviction, for appellant to raise his ineffective assistance claims in post-conviction proceedings without having taken a direct appeal.

The law on this point has clearly been altered. An explicit statement of this change is made in *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975). Under *Dancer*, appellant's post-trial change in counsel made it possible for him to raise, on direct appeal, most if not all, of the grounds for relief alleged herein. Where an appellant is represented by different post-trial counsel, and said appellant either fails to take a direct appeal or fails to raise his claims of trial counsel's ineffectiveness on direct appeal, such a failure will constitute a waiver of these issues as to post-conviction proceedings, excepting only those claims which fit under one or more of the four categories listed in *Dancer*.[10]

However, we recognize that it would be clearly unjust to apply this aspect of *Dancer* retroactively, and we have therefore considered all of appellant's arguments.

The order of the lower court denying appellant's Post Conviction Hearing Act petition is affirmed.

10. "Our Post Conviction Hearing Act and the principles of judgment finality mandate that claims of ineffectiveness of counsel may only be raised in PCHA proceedings 1) where petitioner is represented on appeal by his trial counsel, for it is unrealistic to expect trial counsel on direct appeal to argue his own ineffectiveness, 2) where the petitioner is represented on appeal by new counsel, but the grounds upon which the claim of ineffective assistance are based do not appear in the trial record, 3) where the petitioner is able to prove the existence of other 'extraordinary circumstances' justifying his failure to raise the issue, Post Conviction Hearing Act § 4(b)(2), 19 P.S. § 1180–4(b)(2) (Supp.1974) or 4) where the petitioner rebuts the presumption of 'knowing and understanding failure.' Post Conviction Hearing Act § 4(c), 19 P.S. § 1180–4(c) (Supp.1974)." *Commonwealth v. Dancer*, 460 Pa. 95, 100, 331 A.2d 435, 438 (1975).